Because Len is going to be on video also, Joe. Okay, Mr. Mockbee. Yes, ma'am. May it please the court, my name is David Mockbee, Lisa Hall, and myself represent the appellant in this case, E&HSteel Corporation. I request that I be allowed a final four minutes for rebuttal. It can't be or, we have to tell the timer. You want five or you want four? Four. Okay, four. Thank you. I didn't realize I said both and I apologize for that. I first want to thank the court for this opportunity to give oral argument because we believe this is a very important case in the public construction industry, not only federal public construction because it is a Miller Act case, but also because as the court knows, most states have passed similar type public construction bond statutes, commonly referred to as Little Miller Acts, and those states in applying the Little Miller Acts look to the federal court case decisions for properly applying their acts as adopted. Well, we have given you oral argument, so proceed. Yes, ma'am. Thank you, Your Honor. Plainly and simply, we submit that the district court made an error, both a clearly erroneous factual finding and finding that David's design build was not a subcontractor to see Pyramid Enterprises, the prime contractor, but instead was a material. I want to ask you, maybe we have the same question. I wanted to ask you, are we dealing, are the facts agreed upon, is there an issue of fact or isn't it an issue of law, i.e. a conclusion reached after the agreed upon, stipulated or not contested facts? Judge Slobider and I are asking the same question because in reading your brief and going back over your brief, I coded to try to find specific allegations of facts that were not supported by substantial evidence and I couldn't find any, so this is your opportunity to prove me wrong. You're efficient in my research. I don't desire to prove you wrong, but I cast the case in the manner that I did because we believe that the facts that the court did find dictate a conclusion that Haven's design build was a subcontractor, not a material one. That's illegal and it affects our standard of review. Yes, ma'am. And so, you don't disagree, is that correct, I should ask you, do you disagree with any of the facts or with the conclusion? I do disagree with some of the specific factual findings by the district court, but I don't think those factual findings change the outcome that this court should reach and that is reversing the case. We are satisfied that based upon the facts that Judge Kluger found under the Miller Act that's properly applied, this court must find that Haven's design build was a subcontractor, not a material one. Should the district court then somehow have preponderated these facts differently and is that the error of law committed in its eventual determination that there was not subcontracting states? The court erred in not following McElvoy and Ridge, the two United States Supreme Court cases, which clearly set out the two tests that we submit are to be applied to the Miller Act to determine whether for Miller Act purposes a middleman is a subcontractor or supplier. Okay, to go back just to make clear that all three of us, there are no material facts that you disagree with. That's correct. Okay, I just wanted to get back there. Thank you. Okay, the first test as pronounced by the United States Supreme Court in McElvoy in 1944 was if the middleman takes a specific part of the labor or material requirements of the prime contract, then he is a subcontractor and then in 1977, 30 years later, the only other United States Supreme Court case on this Miller Act subcontractor supplier issue, in Ridge, the United States Supreme Court said and what we are saying is if the middleman has an important and substantial relationship to the prime contractor, then he is to be considered a subcontractor for Miller Act purposes. And we're talking about not E&H, but we're talking about Havens. Yes, ma'am. Because if Havens was a subcontractor, then I gather E&H gets to recover on the bond. Yes, ma'am. There's no dispute between the parties that if Havens is a subcontractor, we qualify as a supplier to a subcontractor. We gave the 90 day notice from the last supply of labor material and we are entitled to recover. That is correct, your honor. The district court taking the facts did not then apply those facts to the two tests set forth by the United States Supreme Court. We say that to this court because the facts are overwhelming. The court found that this C-17 hangar project in McGuire Air Force Base, New Jersey, is a structural steel superstructure facility. The skeleton, if you will, of this building is the structural steel that was designed, detailed, fabricated, and delivered by Havens design bill both directly and with the assistance of E&H as its supplier. How much weight should the also vis-a-vis the other factors here to the fabricated nature of the work done by E&H? Judge, I think there's a distinction here. It's not the fact that the work was fabricated. It's the fact that the work was custom fabricated for this project must be given great significance. But that was not done on the site, is that correct? I mean, if you look at the graphs that are in your brief that are very useful, they weren't put together on the site as such. And there's a very, Havens did a very small percentage of the total project. Is that correct? Your honor, that is correct percentage wise, but not in the terms of applying the test by and it's whether there is an important and significant relationship. And although the subcontract between Havens and Pyramid was only 7.8 percent, the facts that Judge Kluger found showed that that was the largest single subcontract issued on this contract. And in fact, all of the other trades were done self-performed by Pyramid. So the question is, is this a specific important subcontract? The answer is absolutely in a project like this. Mr. Mockbee, you have argued so far with a number of references to McEvoy and its Supreme Court jurisprudence, and obviously we must follow it. And it's important here. Speaking only for myself, however, I can get only so much guidance from McEvoy and McEvoy and Rich in what seemed to me to be inherently fact-bound types of cases as this one is. That calculus is made, again for me, a little more difficult because I don't think we have dealt with the Miller Act and subcontractor status in any precedential opinions in this court. Your brief analyzes at length and summarizes case law from various other courts, various circuits. So I'd like to know if beyond McEvoy and Rich, you have any tests or for that matter, any other factors that have been stated by other courts that you would have us adopt or follow? Your Honor, in fact, we did send forth several cases in which factors are considered by those courts in determining this issue. I would point out to this court that we respectfully submit that those factors are merely tools that the circuit courts use to determine if the facts in a given case satisfy the subcontractor slash supplier dichotomy that the Supreme Court sets forth in McEvoy and Rich. So we submit that where Judge Cougar went wrong was he forgot the remedial purpose of the Miller Act, which is to protect those supplying labor and material. What is there in the record to show that Havens had a relationship with the contractor? The purchase order, Your Honor, we think is the primary evidence it was cited by Judge Cougar. That was one purchase order, isn't that right? Yes, ma'am, Your Honor, but it provided not only for the supply of the structural steel, but for the design assistance by Havens Design-Build to actually assist in the design of contractual undertaking that Havens would make design changes that would result in at least $50,000 in savings to Pyramid. The purchase order required that Havens, with a registered engineer, design the connections for these 5,379 pieces of custom-fabricated steel that became, when erected at the job site, the structural steel superstructure for this project, including 38 pieces of steel that weighed more than 10 tons each, one weighing 34 tons, the M3T. But a material man can, somebody who supplies heavy steel girders, let's say, can be just a material man also. I mean, the fact that they supply big products doesn't make them a, doesn't make him or it a subcontractor. Now, you're talking about the connectors. Yes, ma'am. And those are, is that what is reflected in these photos on page 10 of your brief? Yes, ma'am, that's exactly right, Your Honor. Those are detailed connections that were designed by Havens detailer for this project. Is that the major factor that leads you to argue that Havens was a subcontractor rather than a material man? That is one of the major factors. If I may, Your Honor, explain it this way. Sure. As I try to best put this in perspective, a middleman is a subcontractor on a construction project for Miller Act purposes. When he's dealing with a product, it has to be specially made for this project, but it can't be made on site. Structural steel can't be fabricated from road mill steel, holes punched, pieces welded, plates attached. At the job site, there's not a place to set up a fabrication shop for massive steel like this at the job site. What I submit to the court is, when you're looking at a manufacturer of a product that is made specifically for this construction project, it must be approved for this construction project. It must be shipped in a timely manner so that it can be erected so as not to delay this construction project, including the design of the details for the fabricated steel from the construction drawings, the shot drawings, the erection drawings that determine the sequence of erection. All of that is work that is really construction. It's just off-site construction, as opposed to the mere standard fabrication of wood beams or products that a manufacturer makes every day, regardless of where it's going. It may suit a particular job or not. This is a product that was created, detailed, designed, fabricated, and delivered for one unique project, and that's the McGuire Air Force Base. Is the this that you're just talking about, the this you said, this is a product, is the this the connectors? No, ma'am. It's the entire structural steel system, including the connections, which are integral to the proper performance of these components, which only work as a system if every connection is properly designed to carry wind and dead load and to hold the cranes that are used in the hangers, all of which were designed by Havens, not by Sea Pyramid, making it a specific part of the project. My time is up, but may I? You've reserved, so you're coming back. Can I respond, though? Judge Smith asked me one question. Oh, sure. You asked me about the cases, Judge. I did. I thought you'd given up on that. No, sir. I'll think again. We're going to come back to it in rebuttal, though. Judge, I want to, if I may give to the clerk or to the court, I have a case that neither party cited. It's U.S. to the benefit of conveyor rental and sales versus the U.S. 981F2nd448. It's a 1992 Ninth Circuit case, and I don't know. We did what we thought was an exhaustive search, and we missed this. Have you given and advised your friends on the other side that you're going to rely on this case? Judge, it's really a discussion. No, no. That's a question. The question has to be yes or no. I did not give it because I'm not relying on the case other than it talks about a lot of the other cases that we discussed in our briefing. Well, what I'm going to say is you can hand it off, but I will give the appellees the opportunity to send us a letter within the next five days, let's say by the end of this that comments on the case because you didn't have an opportunity. Now, you have a copy for them? Yes, ma'am. Okay. Well, give them the copy now. And I'll leave these with the clerk. Yeah, well, you'll have to give it. Yes, but you'll have to give us the site because Judge Wise, we can't hand it to Judge Wise. So your site is 981- 981F2nd448. And this is an older case, so it really should have been- And I apologize to the court. We didn't find this in our research, all of these briefs that we've done in this case. Well, you just found it. How did you just find it? Well, it showed up in yet another case that we were reading. I saw a site to this particular case. Okay. Well, we'll take all the help we can get. Yes, ma'am. So I don't want to say we won't read it or know it, but obviously we'll give your friends a chance to respond. Thank you. Okay, we'll see you. Yeah, Joe, do you have any questions? No questions, ma'am. May it please the court, my name is Paul Morris and I represent the appellees in this matter. And listening to what the appellant just said about not contesting the factual findings of the court, I guess at that point, we can almost take the reply brief at this point and disregard it because in the reply brief, they seem to argue with various factual findings. Well, our jurisprudence clearly disregards issues raised for the first time in a reply brief. They're waived other than in extraordinary circumstances. Thank you, Your Honor. So since that, we're now going to look at Judge Kugler's facts as found and apply them to the case. And you've heard a lot of talk about McEvoy and Rich. And I think anybody can agree, those are very vague standards. Well, that was my question to your adversary a few minutes ago. And I was really asking for some help here in terms of factors or a test that we might apply to flesh out McEvoy and Rich because for me, they are not terribly helpful in resolving a very fact-bound case. And we have cases that have been cited by both sides. We have various factors. The Sixth Circuit's given us the nature of the material and the work performed by the purported subcontractor. I won't take your time by going on. But I would be interested in hearing if you would like to urge upon us a test or suggest to us that we adopt language that other courts have adopted, since I don't think we have a precedential opinion on subcontractor statements. And Judge, that's why to have a black-letter-of-all test for all these cases is virtually impossible. What you have to do is look at every case on an extremely fact-sensitive basis. And you also have to look at the other. You're just asking us to reweigh the facts. Judge Wise has a question. I'm sorry. Joe? Don't we have to go back to the Moore Act and its purpose? At the very start, it's a renewal statute passed for protection of people who ordinarily would have the remedy of mechanic's leave. And the cases speak of material or labor government pay. Yes, material. Not just labor and material. Material or subcontractor. So material is subject to the benefits of the act. Depending upon the tier, Your Honor. For instance, if Havens is deemed a subcontractor, in that event, E&H Steele has a viable claim. If Havens is deemed immaterial, then in that event, E&H Steele loses its claim. That's not what Judge Wise was asking. I understood Judge Wise to say that, or to ask, whether the act doesn't protect both labor and material. And I guess you were focusing on the material, Joe? In this case, yes. But isn't it true that the steel here was the absolute essential part of the whole project? Yes, and that brings me back to a sample in the reason why McEvoy and Rich are not really helpful to the Court because of their vagueness. Let's assume for a minute that C. Pyramid or, excuse me, E&H Steele or Havens was to supply pre-cut lumber for an entire project. Simple pre-cut lumber beams. But we don't have simple pre-cut lumber here. We have an enormous quantity of custom-fabricated steel. But that means the project cannot proceed. That's correct, Your Honor. But the steel that is pre-cut is something that is customarily done by every steel fabricator in the industry. Well, not only was it the sine qua non of the project, as Judge Wise has pointed out, am I correct that it was also the single largest contract? The single largest contract because C. Pyramid is kind of a dinosaur in the industry in that they self-perform a large majority of the work. But it was 7.8 percent. There's been other cases. So it was the single largest contract? Single largest contract. The Fourth Circuit, in one of its cases, in Miller Equipment Company, refers to a factor as the financial magnitude of the subcontractor contract in relation to the total project contract price. So this, at least ratio-wise, would be the highest of all the contracts in terms of its magnitude. Is that right? Yes. Comparing it to Miller, Miller is 15 percent of the project. That's why I said ratio-wise as opposed to the manner in which you characterize it. And if you want to talk about the other steel cases I cited, if you want to talk about percentages, Clark v. Moon, the purchase order was 5.5 percent. Pioneer v. Ellis, just under 9 percent. And these are cases where the circuit courts found that these parties were not subcontractors but materialists. Interestingly enough, our figure falls almost right in the middle of those two cases. In all the other cases... If Pyramid did 90 percent of the work and supplied 90 percent of the material, then the 7 percent that Haynes took care of would be an overwhelming part of the whole project, would it not? Well, Judge, I don't think if you have to look at it in the big picture as far as the overwhelming part. And the reason I use the supplier of, let's say, woodcut beams to a project, if that's the entire framing for the project, is substantial. It's important. And what we're talking about here is structural steel. And this is how it's made. When structural steel is made for a project, it's made only for that project. It's not a complex process. A lot of it's done by a computer. It's done customarily in every project that a steel supplier cuts the beams, drills the holes, welds on the plates. This is industry standard. There is nothing different here that Haynes did than any other steel factory. What about the connectors that he was talking about? That is customary and standard, too. How do we know that? In other words, is there a fact finding on that one way or the other? You're telling it to us. But is that a finding by the district court? Yes, it is, Your Honor. And specifically, Judge Kugler rules that Haynes did nothing more than all that was customarily expected of a steel fabricator in this industry. I can refer you if I can find it. Well, I can find it. Yes, I did cite that in fact in my memorandum of law. That's the difference that we have here. We're talking about something that this is something steel fabricators do on every project, whether it's five beams or whether it's 5,000 beams. Haynes did nothing different. Where the court defined that if you prepare shop drawings, if you do connection details, if you do this, if you do that, the customary things that they're somehow a subcontractor, then we might as well just name, instead of custom steel suppliers, custom steel subcontractors because there could be no such thing as a custom steel supplier. You would agree, would you not, that the lack of designation of Haynes as a subcontractor is not dispositive here to its state? Yes, I would, Your Honor. That's very clear. Would you also agree that it's not dispositive of subcontractor status as to whether or not there was on-site work done? That is an important factor, Your Honor, that a lot of the courts talk about. I can give a list of factors if you'd like. One court or a few courts have found it to be dispositive, I believe, but others have not. Correct. How should we regard it? Well, Judge, and that's what I'm getting back to. You have to look, I think, in order to reach a fair finding on a case-by-case basis, what is the industry standard for this particular industry on this particular project? What's in the record with respect to that in this case? As far as? Industry standard. Judge, that is, and once again, Judge Kugler sums it up. In his opinion, he cites various factors which start on page, very, very, very, finding of facts, and it continues through page 9 or page 10. He recites numerous factors as to his factual findings as to what took place. And in conclusion, he reaches that all that Havens did on this project is what was customarily expected of a steel fabricator on this type of project. Nothing more, nothing less. And I think that's very important because, like I said, you can't apply a rationale from a court that's talking about a complex hydraulic system because what's expected, that industry is a little bit different than what may be expected in the steel fabrication industry. And that's why this standard gets a little tricky. So there are some general factors like whether retainage was held, whether there was on-site labor. These are kind of general factors. But then you have to look at each industry. What's customary? What's expected? And I think the courts have found when parties classified a subcontractor rather than the materialman, that things happened outside of that customary standard. They did more than was customarily expected. Okay. Okay. And if you look at the cases cited by the appellant, we've already talked about F.D. Rich and McEvoy. You agree that although F.D. Rich and McEvoy sort of are out there, they don't require a disposition one way or the other in this case. I think, Judge, it's the black letter law that is there. But it's honestly so vague that literally if you supplied all the same to build the same castle, under those cases you could say, boy, gee, it's important. The overall project is a substantial relationship. You could literally find that person a subcontractor. And that's why you have to go case by case and look at the other factors. And Judge Cougar does a fantastic job in outlining them. Literally, I think it is one through 30 as to all the factors, the factual findings he makes that he believes weighs strongly in favor of finding havens merely a supplier, not a subcontractor. One through 42. One through 42. I misspoke. I think. Okay, go ahead. So, you know, in summation, I think if there's one overriding fact through all these circuit court cases, if there's one overriding thing that you see rationale that appears, it's how incredibly fact sensitive these cases are. It would be so nice if you could just say pigeonhole it right in there. Because in some cases, certain factors are important. In other cases, other factors are important. There are a general list of factors, such as, like I said, whether there was on-site work, whether retainage was held, things of that nature. But the rest of them, for each case, tend to be industry specific. Judge Wise asked you, I don't want to paraphrase it, something like, but wasn't the steel fabrication the most significant aspect of this contract? Was that a fair paraphrase, Joe? And how do you answer Judge Wise's question? I'm not sure you did. Well, I don't think you can say that that's necessarily the most significant part of the project. If the steel was the only thing that was put up, obviously, you don't have a functional building. Now, of course, they're going to say without the steel, there's no building. We go back to without the sand, there's no sand castle. Without the lumber, there's no building. You can't take that sort of approach. And that's why these cases have highlighted that. What about the fact that, as Judge Cougar found, every piece was cut out of non-inventory old steel? I understand that, Judge. And if you look at Judge Cougar's decision, he finds that custom fabrication for this project was not particularly complex. He says that it was similar to cutting wood beams. He makes that analogy. Obviously, and he finds that what they did- Well, Judge, I think the complexity determination is clearly a finding of fact. The judge made a determination that the beams, as produced by Hayden's, were not particularly complex for this project. And that appears in his decision. Also, the appellate makes mention that there was design-assist engineering. Judge Cougar finds that the only thing that was design-assist is Hayden's suggested material substitution. You know, gee, let's use this beam instead of the other one. That's hardly design-assist. But finding 34 says that the shop drawings were unique to this job. And, Your Honor, that's the case with shop drawings, whether it's for five beams or whether it's for 5,000 beams. A shop drawing, just to help out the Court, it's literally a map that says, cut this this length, drill a hole here. That's a shop drawing. Even if it was to cut an eight-foot beam to six feet, that's a shop drawing. For every project, shop drawings are specific. And for every project, unless you're using a standard beam, you can only use the steel for that project. So this was nothing different. Hayden's didn't do anything that was different. And as far as what Sea Pyramid expected, they'd worked with steel suppliers for a long period of time. They said there was nothing different about this project. This is what they do. And there's an industry standard. There's actually a book, The Code of Custom Standard Practice for Steel Buildings and Bridges, which was introduced during trial. And that says this is what it's customary to do. And guess what? There's not a single thing that Hayden's did that's outside of that book. So at this point, Your Honor, unless you have any further questions, I think I'm beating the dead horse. Thank you. Judge Barnes, do you want to take up the horse? I'll carry it out, Your Honor. Thank you. Mr. Moffitt. Thank you, Your Honor. Mr. Moffitt, as I read the district court's findings of fact, certain things stand out to me. Let me just tell you which ones. Hayden's didn't design the hangar, didn't erect any of the steel, didn't supervise the steel, performed no on-site labor of any kind. The only engineering it did was the detailing of the connections. And its obligation ended with the delivery of the steel. So why isn't it a material man that made the steel? The steel is the kind of thing that you make for any site, delivered it, and that was it, period. Why doesn't that sound more like a material man than a subcontractor? Your Honor, I don't know that in the classical definitions of the two, it doesn't sound more like a material man. But under the Miller Act criteria for material man and subcontractor, we say you can look at, as Judge Weiss indicated, it can be the specific supply of labor or material. So the fact that there's no work done on site, Your Honor, is really not the ultimate issue under the Miller Act. Yeah, but if you're building a brick building, and so you can't have the building without the brick, and you tell the brick manufacturer, I want three by five brick, and so the brick builder does that. Let's say it's 20% of the job, does that make the brick builder a subcontractor? No, ma'am, Your Honor, it doesn't. And that's the distinction I'm trying to make, because I'm taking your example to be, we're taking standard production brick manufacturer of a particular type and model number that all brick factories have. Let's say it's special, I want bricks that curve or something, look at the Kimmel Center. That changes the situation. We submit under the factors, it now makes it work that's being done specifically for this project. So the general contractor, when they contract out the brick fabrication of these particular shaped bricks, they know that somebody is going to fabricate these bricks for this project, and they're going to be buying supplies and materials to then allow them to make the ingredients to make these bricks in a very specific, customized configuration for this project. Does that make them a subcontractor? If they are a significant and important part of the overall project, yes, ma'am. So if it's a brick building, completely covered in brick, which are all special made bricks according to design for this particular project, pursuant to shot drawings, details, and erection drawings like the steel here, then yes, ma'am. Judge Smith, I would like... I'm sorry? I'm just wondering if a contractor is building a house, a brick house, and with the material man who supplies the bricks be covered by mechanics, will he? Yes, sir. The supplier to the contractor would be, as I understand the residence, the contractor actually buys the materials. So yes, the material man would be covered. Yes. Yes, sir. Because there would be a direct contractual relationship in the example that I understood your honor to be asking about. Judge Smith, can I go back to the factors? Because we did identify the factors and we've spoken to them. But I want to preface that by saying again, it's the factors for determining if this is... What you have with respect to giving us a kind of survey of the law that's out there. Yes, sir. My question was more to the point of asking whether or not there is some test that's even possible for us to adopt in these necessarily fact-bound cases, or alternatively, whether there are certain factors that this court precedentially ought to somehow acknowledge. I think you can use the factors that we've identified in these earlier circuit court cases that have identified specific factors, but only as tools. The purpose being to determine whether those tools lead you to the conclusion under the remedial... Tests are tools. We use them all the time. And in the absence of them, it becomes much more difficult to decide cases. Those factors that have been identified properly apply to the facts of this case, as found by Judge Kudler, can only lead to the legal conclusion that Haven's design bill was a subcontractor, not a material man. Yes, sir. And if I could take those factors off right quick, or is my time up, Your Honor? Is his time... Is that red light? His red light? What do you want? Do you want to hear it? I've read the brief. They are listed in the brief, and specifically for these facts of this case, Your Honor. Thank you. Do you have any questions? No, no, no. Okay. And before you leave, I just have to ask you, off the tape. You're from Jackson, Mississippi. Isn't that where Eudora Welty came from? Yes, ma'am. My husband had a good friend who came from Jackson, Mississippi. In fact, they've recently taken her house and made a memorial out of it. Oh, really? So to get down that way, you need to stop by. Okay. Thank you. Thank y'all. Her work is wonderful. Yes, ma'am. Thanks. Can we go on? Joe, okay to go on to the next case? Yeah. Okay. In that case... What? Oh, no. Did you hand... Excuse me. The Ninth Circuit case. The new case. Thank you for reminding us. May I approach? Yeah, give it to him. Thank you. I hope you find our weather agreeable. Yes, it is. Probably wonderful even in Pittsburgh, Joe. It is. What's this even in Pittsburgh? We need to hold up the standards of the Western District here. Let's get our papers together. The next case that we'll hear argument on is with Nikki versus Rodale. And so here...